(13 P.3d 351)
No. 83,445

JOHNSON COUNTY BANK, *Appellant,* v. JOSEPH F. ROSS, BONNIE J. ROSS, and JACKSON NATIONAL LIFE INSURANCE COMPANY, *Appellees.*

Opinion filed June 2, 2000.

*Scott J. Bloch* and *Bradley R. Finkeldei,* of Stevens & Brand, L.L.P., of Lawrence, for appellant.

*Yvonne M. Warlen, Christopher S. Shank,* and *Joel Fahnestock May,* of Shank, Laue & Hamilton, P.C., of Kansas City, Missouri, for appellee Jackson National Life Insurance Company.

Before MARQUARDT, P.J., BEIER, J., and JOHN W. WHITE, District Judge, assigned.

MARQUARDT, J.:  Johnson County Bank (Bank) appeals the trial court's decision.

The parties agreed to stipulated facts. In 1989, Joseph F. Ross purchased a life insurance policy from Jackson National Life Insurance Company (Jackson). In 1990, Joseph and his wife, Bonnie J. Ross, assigned part of the life insurance policy to Capital City Bank and Trust (Capital). Jackson acknowledged receipt of the assignment and stated that it "has been filed at the home office" of Jackson.

On December 24, 1996, the Rosses executed a promissory note for a $100,000 loan at the Bank. At the same time, the Rosses assigned their Jackson insurance policy to the Bank, stating that it had net cash value of at least $158,440.42. The Bank sent a copy of the Rosses' assignment form to Jackson. The Bank asked Jackson to acknowledge the assignment by signing and returning the form to the Bank. Jackson never signed the assignment form. Jackson said that it received the assignment, but it was never "filed" with the company. After receipt of the assignment, Jackson sent a letter to Joseph Ross asking for additional information. Jackson stated that the assignment "must state for value receivd [*sic*] and must also state owner's rights." Jackson sent the Rosses a different assignment form and asked that it be completed. The Rosses never completed Jackson's assignment form.

In March 1997, the unencumbered net cash surrender value of the Rosses' life insurance policy was reduced to $81,331.56 because of a $400,000 payment to Capital. The Bank was not notified of the payment to Capital. In August 1997, the Rosses' loan with the

Bank was in default. The Bank attempted to collect the amount owing from the insurance cash surrender value from Jackson. Jackson refused to honor the assignment, saying that the form was "incomplete."

In October 1997, the Bank filed suit against the Rosses for payment of the note and sued Jackson for conversion of the policy and breach of contract. The Bank and Jackson filed motions for summary judgment. The Bank's motion for summary judgment against the Rosses was granted on June 23, 1998. In January 1999, the trial court denied the Bank's motion for summary judgment on the conversion and breach of contract issues. The trial court also denied Jackson's motion for summary judgment. The Bank filed a motion for reconsideration, which was also denied. The Bank appeals the denial.

## Insurance Contract Assignment

The Bank claims that the trial court failed to abide by the clear and unambiguous language of the insurance contract. The Bank argues that if Jackson wanted an assignment on a certain form, it should have stated that fact in the insurance contract. The Bank argues that, under the language of the contract, Jackson was merely entitled to receive notice of the assignment. The central issue on appeal is the meaning of the word "filed" as used in the contract.

Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152, 959 P.2d 894 (1998). Unambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced. The intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein if possible. *Hall v. JFW, Inc.*, 20 Kan. App. 2d 845, 848, 893 P.2d 837, *rev. denied* 257 Kan. 1092 (1995).

An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results

which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. *City of Manhattan v. Galbraith*, 24 Kan. App. 2d 327, 332, 945 P.2d 10 (1997).

Neither K.S.A. 40-434, K.S.A. 1999 Supp. 40-435, nor any other law shall be construed as prohibiting a person whose life is insured under an individual life or accident and health policy from making an assignment of all or any part of his or her rights and privileges under such policy. K.S.A. 40-439. "A valid assignment must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, must be clear and unequivocal, and must be noticed to the obligor." 6 Am. Jur. 2d, Assignments § 113, p. 218. "[I]n determining whether an assignment has occurred, the courts look to the substance, rather than the form." 6 Am. Jur. 2d, Assignments § 114, p. 218-19. "No particular words or special form of words are necessary to effect an assignment in the absence of statutory provisions prescribing a particular mode or form." 6 Am. Jur. 2d, Assignments § 115, p. 219; see *Brewer v. Harris*, 147 Kan. 197, 201, 75 P.2d 287 (1938).

The assignment clause in the Rosses' life insurance policy reads: "No assignment of this Policy will be binding on the Company until it is filed with the Company at its Home Office. The Company will assume no responsibility for the validity or sufficiency of any assignment."

Jackson argues that the assignment form was "incomplete." The letter Jackson sent to Joseph Ross on January 27, 1997, stated: "The collateral assignment must state for value receivd [*sic*] and must also state owner's rights." Jackson ignores the language of the Bank's assignment form that stated:

"3.   ASSIGNMENT. To secure the Obligations and in consideration of the Loan, Owner assigns and grants a security interest to Bank in and to all right, title and interest of Owner and Beneficiary in life insurance policy number 14185000 (Policy) issued by JACKSON NATIONAL LIFE INC. CO. (Company) on the life of:
JOSEPH F. ROSS (Insured)
BONNIE J. ROSS (Insured)."

It is undisputed that the Bank sent Jackson a copy of the Rosses' assignment form in January 1997. Jackson admits that it received

a copy of the Bank's assignment at its home office; however, it argues that merely sending an assignment to the company does not mean that it has been filed.

The word "file" contemplates the deposit of a writing with the proper official. *Capital Services, Inc. v. Dahlinger Pontiac-Cadillac, Inc.*, 232 Kan. 419, 421, 657 P.2d 36 (1983). "Filed" also means: "To lay away and arrange in order, pleadings, motions, instruments, and other papers for preservation and reference. . . . To deliver an instrument or other paper to the proper officer or official for the purpose of being kept on file by him as a matter of record and reference in the proper place." Black's Law Dictionary 628 (6th Ed. 1990).

The Bank complied with the language of the Rosses' life insurance policy when it sent a copy of the assignment to Jackson. The policy merely states that the assignment must be "filed." Thus, under the meaning of the term "filed" in Kansas, the Bank complied with the language of the policy.

There is nothing in the policy that requires a policyholder to use a specific form for assignment or that Jackson must review or approve an assignment. If Jackson intends to restrict or limit assignment of its policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. The court's function is not to make another contract for the parties. Its function is to enforce the contract as made. *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992).

The Bank complied with the clear language of the Rosses' insurance policy when it sent a copy of the assignment to Jackson. The issues raised in Counts II and III of the Bank's petition require factual findings; therefore, the case is reversed and remanded for additional proceedings.

## Kansas Interpleader Law

In its January 1998 response to the Bank's petition, Jackson filed a cross-petition for interpleader claiming that the Bank, the Rosses, and KBIC all had a stake in the life insurance funds. As this suit

progressed, claims involving the Rosses and KBIC were resolved. Thus, the Bank was left as the only adverse party to Jackson.

The trial court found that the parties took no steps to "perfect" the interpleader action, which left the trial court without subject matter jurisdiction. The trial court believed that it lacked subject matter jurisdiction over the interpleader because no order was issued regarding the interpleader. The trial court also stated that the interpleader was unnecessary because there were only two parties to the action after KBIC was dismissed. The Bank contends that Jackson's mere presence in the suit gave the trial court jurisdiction and obligated Jackson to preserve the interpled funds.

Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. K.S.A. 60-222(a).

Interpleader protects the stakeholder from multiple suits and from determining the validity and priority of disputed claims; it also protects the claimants by bringing them together in one action so that a fair and equitable distribution of the fund may be made. *Bryan v. Davis*, 11 Kan. App. 2d 691, 693, 732 P.2d 805 (1987). The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder is whether the stakeholder legitimately fears multiple claims directed against a single fund. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center*, 229 Kan. 330, 336, 624 P.2d 971 (1981).

This factual scenario does not fit within K.S.A. 60-222. Since interpleader was not appropriate, we need not consider the rest of the Bank's arguments on appeal. The trial court did not err by refusing to consider the interpleader.

Affirmed in part, reversed in part, and remanded.